Robert BELL–EL, Appellant,

v.

STATE of Missouri, Respondent.

No. ED 97689.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 20, 2012.

Maleaner Harvey, Assistant Public Defender, Office of the Missouri Public Defender, St. Louis, MO, for Appellant.

Chris Koster, Attorney General, John Grantham, Assistant Attorney General, Jefferson City, MO, for Respondent.

KURT S. ODENWALD, Judge.

### Introduction

Robert Bell–El ("Movant") appeals from the motion court's denial, without an evidentiary hearing, of his Rule 29.15[1] motion for post-conviction relief. In his motion, Movant argued that his defense counsel was constitutionally ineffective in failing to request a jury instruction stating that the jury was not permitted to draw any adverse inference from Movant's decision not to testify at trial. Because the record clearly shows that Movant made an informed and strategic choice not to offer the instruction, we affirm the motion court's judgment denying Movant's motion for post-conviction relief.

### Factual and Procedural History

The facts, viewed in the light most favorable to the verdict at trial, are as follows. On March 15, 2005, Officer Steven Polster ("Officer Polster") pulled over a vehicle driven by Movant on suspicion that Movant had committed an unrelated crime. Officer Polster took Movant's driver license and informed Movant that he was performing an investigative stop. Officer Polster asked Movant to stay in his car and returned to his patrol car to await backup. A few moments later, Movant got out of his vehicle and asked Officer Polster why he had been stopped. Officer Polster told Movant to return to his car and wait. Movant got back in his vehicle and drove away, leaving Officer Polster with his driver license. A car chase ensued, eventually including patrol cars from several municipalities. The pursuit ended when Movant jumped out of his still-moving vehicle, which collided with the vehicle of Chief of Police Rob Hawkins ("Chief Hawkins"). Movant escaped on foot, but was subsequently arrested.

The State filed felony charges against Movant for leaving the scene of the accident after Movant's vehicle collided with the vehicle driven by Chief Hawkins. Officer Polster and Chief Hawkins testified at trial to the facts above. Movant did not testify in his own defense. The trial court discussed with Movant his right to testify. The trial court also discussed with Movant his right to request and submit a jury instruction directing the jury that they could not draw an adverse inference from Movant's failure to testify at trial. Movant

---

1. All rule references are to Mo. R. Civ. P. (2010).

did not request the jury instruction. The jury found Movant guilty and the trial court entered a judgment accordingly. This Court affirmed Movant's conviction on direct appeal in *State v. Bell*, 330 S.W.3d 500 (Mo.App. E.D.2010). Movant filed, and the motion court denied, without an evidentiary hearing, a Rule 29.15 motion for post-conviction relief alleging ineffective assistance of defense counsel. This appeal follows.

### Point on Appeal

In his sole point on appeal, Movant argues that the motion court clearly erred in denying his motion for post-conviction relief because his defense counsel was constitutionally ineffective in failing to request a no-adverse-inference jury instruction.

### Standard of Review

Appellate review of a motion court's denial of a Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the motion court were clearly erroneous. Rule 29.15; *Day v. State.* 770 S.W.2d 692, 695 (Mo. banc 1989). The motion court's findings and conclusions are presumptively correct and will be overturned only when this Court is left with a "definite and firm impression that a mistake has been made" after reviewing the entire record. *Vaca v. State*, 314 S.W.3d 331, 334 (Mo. banc 2010).

### Discussion

As a threshold issue, we consider whether we have jurisdiction over the instant appeal. The State asserts that Movant's appeal was untimely filed. Movant filed his notice of appeal on November 10, 2011. The State argues that the motion court entered its original judgment on September 26, 2011, rendering Movant's notice of appeal due thirty days later on October 26, 2011. Rule 81.05(a)(1). The

State acknowledges that the motion court entered a second judgment on October 3, 2011, but argues that this second judgment has no impact on the deadline for filing a notice of appeal because it is identical to the September 26, 2011 judgment. The second judgment appears to have been signed on September 26, 2011, but was stamped by the clerk on October 3, 2011. The docket sheet of the trial court reflects that the judgment was entered on October 3, 2011. The State argues that unless Movant can demonstrate otherwise, we must assume the second judgment was in fact issued on September 26, 2011, rendering Movant's appeal untimely.

The State's argument misstates the presumptions we draw as to the accuracy of the record on appeal. A presumption exists that a court's changes to its original judgment constitutes an amendment to the original judgment. *Pirtle v. Cook*, 956 S.W.2d 235, 243 (Mo. banc 1997). State neither provides, nor do we find, any authority for the proposition that we may ignore the date of an amended judgment set forth on the docket sheet and the file stamp reflecting that date in favor of a presumption that both were in error. Giving effect to the second judgment as reflected on the docket sheet, the motion court's judgment became final on November 3, 2011. Under Rule 81.04, Movant was required to file his notice of appeal within ten days of November 3, 2011, which he did. We treat Movant's notice of appeal as timely filed. Rules 81.04 and 81.05. Accordingly, we have jurisdiction over Movant's appeal and proceed to determine the merits.

Defendants in criminal actions have a Sixth Amendment right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "The benchmark for judging any claim of ineffectiveness

must be whether counsel's conduct so undermined the proper functioning of the adversarial process that [the proceedings] cannot be relied on as having produced a just result." *Id.* However, there is a strong presumption that defense counsel's strategy was reasonable, and judicial scrutiny of counsel's performance must be highly deferential. *Id.* at 689, 104 S.Ct. 2052. Therefore, relief will only be granted where the movant can show both deficient performance and prejudice. *Id.* at 692, 104 S.Ct. 2052.

We are asked to determine whether Movant's counsel was constitutionally ineffective for failing to offer a no-adverse-inference instruction. The record shows that the trial court expressly discussed with Movant his right to testify, and his right to offer a jury instruction directing the jurors that they could not hold Movant's failure to testify against him, or draw any negative inferences from that fact. The following related discussion occurred on the record:

> Court: Okay. One of the things that we are going to do next is go over the instructions to be given to the jury, the instructions of law. One question I want to ask you while we are talking about it is there is an instruction that tells the jury that a defendant has a right not to testify, and that no inference or presumption can be drawn from your failing to testify; and it is the Court's understanding that your attorneys have talked to you about that, and that you have decided not to submit that instruction. Is that the decision that you have made.

> Defense Counsel: Actually, Judge, can I have a minute. I did not go over that with him this morning.

> Court: If you would talk to Mr. Bell with regard to that, and perhaps why

don't you take a minute and talk to him about it.

> Defense Counsel: I'm sorry.

> Okay, Mr. Bell, again, do you understand there is this instruction that can be given to the jury that informs the jury, tells them that a defendant has a right to testify or not testify, and if the defendant does not testify, that no inference of any kind can be drawn from the failure to testify. Do you understand that instruction can be given to the jury?

> Bell: I do.

> Court: And [defense counsel] have talked to you about that; is that correct?

> Bell: Yes, they have.

> Court: It is the Court's understanding that you are not asking for that instruction to be given, is that correct?

> Bell: That's correct.

> Court: Again, do you understand if you asked me to give that instruction, I would give that instruction to the jury. I'm sure that your attorneys have told you there are different views on that instruction. Whether that is beneficial or not so beneficial. Some people think it highlights the fact that you have not testified. Some people think that it has a different effect on the jury. I'm sure they have gone over all that with you. But again, this is your decision whether or not the Court gives that instruction, and you are telling me that you do not want that instruction; is that correct?

> Bell: That's what I'm saying.

At the subsequent jury instruction conference, defense counsel did not request the submission of the no-adverse-inference instruction.

■ We reject Movant's argument that his trial counsel was constitutionally ineffective by not submitting the no-adverse-inference jury instruction. It is well established that the decision of whether to

offer a no-adverse-inference instruction is a matter of sound trial strategy and cannot serve as the basis for post-conviction relief. *Barnett v. State,* 103 S.W.3d 765, 773 (Mo. banc 2003); *Knese v. State,* 85 S.W.3d 628, 635 (Mo. banc 2002). As the trial court noted, a disagreement exists as to whether a no-adverse-inference instruction protects a defendant's right to not testify, or whether the instruction serves to highlight to the jury the fact that a defendant refused to testify. *See Barnett,* 103 S.W.3d at 773. The record demonstrates that Movant discussed the availability of a no-adverse inference instruction with defense counsel and a second time with the trial court. Moreover, the record is clear that Movant was informed of the risks and benefits of submitting a no-adverse-inference instruction. Following his consultation with trial counsel, Movant chose not to offer the instruction. Movant's decision to forgo the instruction was an informed and voluntary strategic decision. Movant is not entitled to postconviction relief because that strategy proved unsuccessful.

### Conclusion

Having committed no error, we affirm the motion court's judgment denying Movant's motion for post-conviction relief.

LAWRENCE E. MOONEY, P.J., and PATRICIA L. COHEN, J., concur.